## City National Bank v. King, Patier, Hessian & O'Connell, late partners, etc.

1. PRACTICE—*When it is Error to Take the Case from the Jury.*— Where the issue involves the question as to whether a draft sued on was in fact made before or after the dissolution of a partnership, and that if made after, there was evidence tending to show that the plaintiff was a former dealer with the firm and entitled to actual notice of the dissolution of the partnership, it is error to take the case from the jury.

2. FRAUDULENT ACCOUNTS—*Questions of Fact.*—The question as to whether an account is or is not fraudulent, is a question of fact to be determined only by a jury.

**Assumpsit,** on a draft. Trial in the Circuit Court of Alexander County; the Hon. JOSEPH P. ROBARTS, Judge, presiding. Verdict for the defendant by direction of the court; appeal by plaintiff. Heard in this court at the August term, 1898. Reversed and remanded. Opinion filed March 10, 1899.

This is an action of assumpsit brought by appellant against appellees, on a draft, of tenor as follows:

KING, WILLIAMSON & Co., Wholesale Fruit and Produce.

CAIRO, ILL., 1—20—1896.

Ten days from date pay to the order of ourselves ($1,324.27) thirteen hundred and twenty-four and twenty-seven one hundredths dollars with exchange, value received, and charge same to account of

KING, WILLIAMSON & Co.

To M. KING & Co., Cairo, Ill.

58,909.

(Written across face:) " Accepted 1—20—'96. M. King & Co., R. E. K., Cash." (Endorsed across back:) " King, Williamson & Co."

The firm of King, Williamson & Company was composed of appellee Michael King, T. E. Williamson and T. E. Russell. They were commission merchants and fruit and produce dealers, at Cairo, in this State.

The firm seems to have gone out of business, in or about April, 1895, though so far as the record shows, no formal notice of dissolution was given, nor does the record show any dissolution in fact.

The firm of M. King & Co., composed of appellees, was formed on May 20, 1895, and it conducted its business at the old stand of King, Williamson & Co., two doors from appellant's bank, King being a member of each firm. M. King & Co. continued in business up to and including January 20, 1896, when it dissolved and caused notice of dissolution to be published in a Cairo evening paper of that date, and also caused notice to be published in a morning paper of that city on January 21, 1896. The cashier of appellant's bank was a subscriber and reader of both papers, but he testified he did not see or read the notice of dissolution until after the bank had discounted the draft.

King was the acting manager of the firm of M. King & Co., and the other members of the firm seem to have paid little, if any, attention to its business.

About the time of the formation of the firm of M. King & Co. the bookkeeper of the firm, by direction of King, opened an account on the partnership books with King, Williamson & Co. which showed that the firm was indebted to King, Williamson & Co., the sum of $2,504.42, which amount seems to have been owing for the stock of goods that M. King & Co. received from King, Williamson & Co. At that time there were old outstanding accounts, belonging to the firm of King, Williamson & Co., and the money collected on these accounts, seems to have been credited to this account of King, Williamson & Co. and the money appropriated by the firm of M. King & Co., amounting to several thousand dollars, was charged to this account, but no explanation of these charges has been made, so far as we are able to ascertain from the record.

The credit balance of King, Williamson & Co., on the books of M. King & Co., was, on January 20, 1896, $1,324.27, for which the draft sued on in this case was made. King does not seem to have been called to testify in the case, and in consequence some things are now left in the dark, which possibly might have been made clear by his testimony.

No articles of copartnership of M. King & Co. were

introduced in evidence, and whether any existed is left in doubt, as neither Patier, Hessian or O'Connell produced any, while testifying, so that the inference from the account itself may well be, that M. King & Co., purchased the stock of King, Williamson & Co., amounting to $2,504.42, together with the outstanding accounts of the latter firm, and that the items charged to the account of King, Williamson & Co., represented debts owing by that firm, which were paid by M. King & Co.

The bookkeeper of the firm of M. King & Co. testified that she rendered monthly statements to Patier, Hessian and O'Connell, which contained the account in favor of King, Williamson & Co.

The firm of King, Williamson & Co., did its banking business with appellant; and the firm of M. King & Co. did its banking business with the Alexander County National Bank.

At the time the firm of M. King & Co. was formed, the firm of King, Williamson & Co. was owing appellant $2,300; and soon after that, King drew checks on King & Co.'s account in the Alexander County National Bank, to pay $1,300 of this indebtedness, as it matured from time to time, in favor of appellant, which were paid and applied on King, Williamson & Co.'s indebtedness, leaving a balance due appellant, consisting of two notes of that firm for $500 each. On the morning of January 20, 1896, King drew the draft sued on, and handed it to the cashier and bookkeeper of M. King & Co., and directed her to accept it in the firm's name, which was done, and thereupon King indorsed the draft in the name of King, Williamson & Co., and in the afternoon of that day took it to appellant's bank to get it discounted, but it then being the close of banking hours, the cashier of the bank requested him to return the next morning, which he did, and between half past eight and nine o'clock of the morning of January 21st, appellant's cashier discounted the draft by surrendering the two $500 notes, which the bank held against King, Williamson & Co., retaining $2.80 interest, and paying to King $321.47 in money. During the early banking hours of the same morning appellant's cashier was

called up by telephone, by appellee Patier, who informed the cashier that the draft was fraudulently issued, and requested the cashier not to discount it. The cashier replied he had already discounted it, and that he did not know that the firm of M. King & Co. had dissolved.

Upon the trial, appellees Patier, Hessian and O'Connell, testified that the $2,504.42, was a fraudulent entry on the books, and that their firm did not owe King, Williamson & Co. that sum, but that the item was King's individual investment. They, however, seemed to know but little about the business of M. King & Co. except as to this item. They seem to have paid little or no attention to the business of the firm.

The notes of King, Williamson & Co., amounting to $2,300, held by appellant, were renewed several times, and King indorsed the firm name of M. King & Co. on them as further security, until all of the notes were paid. Knowledge of these indorsements was denied by appellees Patier, Hessian and O'Connell.

Appellant also handled collections on M. King & Co., in doing which they took M. King & Co.'s checks on the Alexander County National Bank, in payment of the collections.

These are substantially the facts of this case, as, after much labor, we gather them from the record. They are probably all contained in the "statement of the case," of counsel for appellant, in their twenty closely printed pages.

Appellant requested the court to instruct the jury to find a verdict in favor of the plaintiff, which was refused. It then asked the court to give eleven instructions, all of which were refused. The court then instructed the jury to find for the defendant, which it did, and the court rendered judgment against plaintiff for costs, and it appeals, and assigns for error the taking of the case from the jury.

GREEN & GILBERT, attorneys for appellant.

Being a *bona fida* holder, and a "previous dealer," and without actual notice of dissolution, the plaintiff was entitled.

to recover and the court should have so instructed the jury.
Camp v. Southern Bk. & T. Co., 97 Ga. 582; National Bank
v. Norton, 1 Hill (N.Y.), 572; Vernon v. The Manhattan Co.,
22 Wend. (N. Y.) 183 and 193; Sibley v. Parsons, 93 Mich.
538; Rose v. Goffield, 53 Md. 18; Mechanics Bank v. Liv-
ingston, 33 Barb. 458; Knapp v. Knapp, 51 N. Y. Sup. 144.

LANSDEN & LEEK, attorneys for appellees, Patier, Hessian
and O'Connell.

MR. JUSTICE BIGELOW delivered the opinion of the court.

Numerous questions of both law and fact, have been ably
discussed by counsel on both sides of this case, but we think
there is only one question necessary to be disposed of, with
the record in its present condition, and that is, did the court
err in instructing the jury to find for the defendants?

The evidence tends to show, that on January 20, 1896,
the firm of M. King & Co. owed the firm of King, William-
son & Co. a balance of $1,324.27, of an account carried on
the books of appellees, ever since that firm was formed, and
that appellees had notice of that fact. It is true that appel-
lees contend that this account was fraudulent, but whether
it was or not, was a question of fact, to be determined only
by a jury, and we express no opinion as to where the right
lies. But if a jury should find that this account was just,
in fact, then the draft drawn by King, in the name of
King, Williamson & Co., against M. King & Co., and its
acceptance by King in the name of W. King & Co., became
an instrument drawn and accepted for a consideration, to wit,
the payment of the above named balance of account. The
fact that King was a member of both firms, while a circum-
stance to awaken the watchfulness of both court and jury,
by no means shows that the contract of acceptance was
invalid for want of delivery, for we see nothing invalid in
the facts, if facts they be, that King, as partner of King,
Williamson & Co., drew the draft, and that as a partner of
M. King & Co. he accepted it, and that again as partner of
King, Williamson & Co., he held it as an obligation belong-

ing and delivered to King, Williamson & Co.   It is a mere' illustration of the fact that in transactions, the same person may act as agent for both parties, and bind them by his acts.   The firm of King, Williamson & Co. is not shown by this record to have been dissolved; it is merely shown to have ceased doing a particular business, in a particular place, but in what way or manner, or for what length of time, is not fully disclosed by the evidence.   So far as shown, King's active agency in this firm has not been extinguished. If the acceptance was made before the dissolution of M. King & Co., so that the accepted draft was in the hands of King as a valid contract—the property of King, Williamson & Co.—then the question as to whether the appellant was a "former dealer" of M. King & Co. or not, or whether appellant did in fact have actual notice of the dissolution of the firm of M. King & Co. when it discounted the draft, can make no difference in this case, because King, Williamson & Co. could have sued M. King and Co. and recovered under such facts, and clearly, King, Williamson & Co. could negotiate and sell the draft to appellant at any time, and appellant could stand on King, Williamson & Co's. title to it, and would have no need to appeal to the laws and usages of commercial paper, for protection.   If, however, the draft was made after M. King & Co. had dissolved, then, if appellant was a "former dealer" of the firm of M. King & Co., it must have had actual notice of such dissolution, at the time it discounted the draft.   See Bates on Partnership, Secs. 606–607 *et seq.*

Looking again at what the evidence tends to show, it appears that King, Williamson & Co. owed appellant $2,300, of which sum $1,300 was paid by checks of that amount, drawn by King, on the account of M. King & Co., at the Alexander County National Bank.   The balance in two $500 notes, was renewed from time to time by King, acting for King, Williamson & Co., and King likewise indorsed several times, the firm name of M. King & Co. upon their renewal notes, as intended guarantors of the notes.   Appellees claimed that the indorsements by King were without their

authority, but the testimony of Miss Kennedy, the cashier
of M. King & Co., and the account of King, Williamson &
Co. tends to show that M. King & Co. bought, not only the
goods of King, Williamson & Co., but also the outstanding
accounts of that firm, and that claims against the old firm
were paid by M. King & Co., as evidenced by charges in the
account. From this evidence, a jury might well be war-
ranted in finding that the new firm took the old firm's busi-
ness as it stood; taking its stock of goods and accounts, and
agreeing to pay its debts. If such were the actual facts,
then King was certainly authorized to indorse the name of
M. King & Co. as guarantors of King, Williamson & Co's.
notes to appellant. He could have taken them up and
given new notes in the name of M. King & Co., because a
partner of a trading partnership is authorized to give the
firm's notes, and the partner certainly would have the same
authority to indorse the firm's name on commercial paper,
when that paper was, in substance, his firm's own debt.
See Bates on Partnership, Secs. 341–351. We think these
questions of fact should have been submitted to a jury, and
if the jury had found that the new firm made this $2,300
debt its own, then King's several successive indorsements
of the old notes, ought, in law, to have constituted the appel-
lant, a "former dealer" with appellees, whether the other
partners knew about the fact of the indorsement or not,
for they were bound to know that King had such authority
in law; and under such circumstances, appellant was entitled
to actual notice of dissolution of the partnership, at the time
it discounted the draft. The cashier is shown to have been
a subscriber to the papers in which notices of dissolution
were published, on January 20th and 21st; he denies, how-
ever, having read them, and he denies that he had informa-
tion from any source, as to the dissolution of M. King & Co.
Both questions, whether appellant was a "former dealer"
and whether there was actual notice, should, under the evi-
dence as it stands, have been submitted to the jury. See
Bates on Partnership, Secs. 616–617.

We think the court erred in taking the case from the jury

because there was evidence tending to show that the account covered by the draft was valid; that the draft sued on, was in fact made before dissolution; that if made after dissolution, then there was evidence tending to show that appellant was a " former dealer " with the firm of M. King & Co. and therefore entitled to actual notice of the dissolution of the partnership, a fact to be likewise passed upon by the jury.

Upon another trial, the questions raised by appellant's counsel as to the notice of defendant's defense, and defendant's right to file additional pleas after the trial had begun, as well as others argued, will, doubtless, be disposed of by the Circuit Court in a manner that will be satisfactory to both sides.

Because the court erred in instructing the jury to find a verdict for the defendant, the judgment is reversed and the cause remanded.